IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIR MOZAMEL IMAMI, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-26-566-J |
| | ) |
| TODD M. LYONS, et al., | ) |
| | ) |
| Respondents.[1] | ) |

## REPORT AND RECOMMENDATION

Petitioner Mir Mozamel Imami, a noncitizen,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 3.[3] United States District Judge Bernard M. Jones, II referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 9. The Government responded, Doc. 13, and Petitioner has replied, Doc. 14. So the matter is at issue.

---

[1]    Respondent Fred Figueora is not a federal official, and the response is not filed on his behalf. *See* Doc. 13, at 8 n.1.

[2]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons below, the undersigned recommends the Court grant Petitioner's habeas petition in part and order Respondents to immediately release Petitioner.

## I.    Factual background and Petitioner's claims.

Petitioner is a citizen of Afghanistan. Doc. 3, at 1. On February 21, 2023, he entered the United States without inspection. *Id.* The next day, he was placed into removal proceedings under 8 U.S.C. § 1229a. Doc. 13, Ex. 2. The Department of Homeland Security (DHS) issued a Notice to Appear (NTA) charging him as removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA).[4] *Id.* Ex. 2. DHS released Petitioner on an order of recognizance under 8 U.S.C. § 1226 and enrolled him in an Alternatives to Detention program. *Id.* at 15 & Ex. 3. Petitioner missed a check-in on March 13, 2023, and DHS terminated him from the program as an absconder. *Id.* at 15.

---

[4]    This section is codified in the United States Code as 8 U.S.C. § 1182(a)(6)(A)(i). Section 1182(a)(6)(A)(i) provides that a noncitizen who is present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General is ineligible to be admitted to the United States. 8 U.S.C. § 1182(a)(6)(A)(i).

On July 12, 2023, Petitioner applied for Asylum and Withholding of Removal. *Id.* & Ex. 5. On January 5, 2026, during a regular check-in, Immigration and Customs Enforcement (ICE) took him into custody. *Id.* & Ex. 4. Petitioner maintains he has no criminal history since he entered the United States and has not violated any conditions of his release. Doc. 3, at 3.

He argues that his re-detention without a pre-deprivation hearing violated the Fifth Amendment Due Process Clause, Doc. 3, at 4-11; that ICE failed to provide him with the required notice and interview in violation of its own regulations and his due process rights, *id.* at 12; (citing 8 C.F.R. §§ 241.4 and 241.13); that temporary injunctive relief is required so the Court may preclude his transfer to another facility;[5] and that the immigration system's structural bias requires relief in the form of immediate release, *id.* at 15.

He asks this Court to order his immediate release; in the alternative hold a bond hearing; or order Respondents to provide him with a bond hearing within three days where the government bears the burden of proving by clear and convincing evidence that he poses a danger to the community or an unreasonable risk of flight and ensure Respondents' compliance; declare his redetention without notice and an opportunity to be heard violated the Fifth

---

[5]    The Court addressed this request in its Order for a Response, Doc. 11.

Amendment; pending this Court's consideration and disposition of this Petition, temporarily restrain and enjoin Respondents, and all persons acting at their direction or in concert with them, from removing Petitioner from the United States or transferring Petitioner outside the jurisdiction of this Court absent prior order of this Court; enjoin Respondents from re-detaining Petitioner after release without: providing prior written notice of the grounds for detention, affording Petitioner an opportunity to be heard and to present evidence; and making an individualized determination, supported by specific facts and evidence, that Petitioner poses a flight risk or danger to the community; and award Petitioner his reasonable costs and attorney's fees. *Id.* at 26-27.

In their response to the habeas corpus petition, Respondents argue this Court lacks jurisdiction under 8 U.S.C. § 1252, that Petitioner has not exhausted his available remedies because he never requested a bond hearing, that he is subject to mandatory detention under 8 U.S.C. § 1225, and that his due process rights are co-extensive with statutory standards requiring no safeguards before revoking release. Doc. 13.

4

## II.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III.    Discussion.

### A.    Petitioner has the right to procedural due process.

Petitioner claims that his ongoing detention without a hearing violates his rights under the Due Process Clause of the Fifth Amendment. Doc. 3, at 4-7. To the extent that Respondents substantively address Petitioner's procedural due process argument, they assert that Petitioner is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225(b) of the INA and is therefore categorically ineligible for a bond hearing. Doc. 13, at 16.

Section 1225(b)(2) mandates detention for noncitizens who are "applicant[s] for admission, [where] the examining immigration officer

determines that [the noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). And under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Respondents provide only that Petitioner was released on his own recognizance after being referred to the Alternatives to Detention program. Doc. 13, Exs. 1, 3. The reason for Petitioner's release remains unclear, but "it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026). And, likewise, § 1225(b)(2) cannot apply to Petitioner as "a noncitizen paroled into the country." *Qasemi v. Francis,* 2025 WL 3654098, at *7 (S.D.N.Y. Dec. 17, 2025) (("[A] noncitizen

6

paroled into the country—*i.e.*, a noncitizen residing in the United States—is not an arriving alien.").

### 1. Section 1226 governs Petitioner's detention.

Section 1226 governs "the usual removal process." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). The § 1226 process starts when the Government files an NTA with an immigration court. *Id.* Section 1226 then lets the Government arrest and detain noncitizens or release them on bond or on conditional parole. 8 U.S.C. § 1226(a). Release is required if the noncitizen can show they are not a danger and will show up at future hearings. *Salcedo Aceros*, 2025 WL 2637503, at *1 (citing *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) and 8 C.F.R. § 236.1(c)(8)). *Id.* If detention continues, the noncitizen gets a bond hearing before an immigration judge. *Id.* To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, community danger, or a flight risk. *Id.*

The initial decision to pursue Petitioner's detention "under § 1226(a) precludes the [G]overnment from later 'switch[ing] tracks' to subject him to mandatory detention under § 1225(b)(2)." *Gutierrez v. Chesnut*, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (citing *Salcedo Aceros*, 2025 WL

7

2637503, at *8). The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcedo Aceros,* 2025 WL 2637503, at *8.

The Court should conclude that § 1226(a) governs Petitioner's detention.[6]

### 2.    Petitioner is entitled to relief under § 1226.[7]

When Petitioner was detained after residing in the country for almost three years, he was not subject to mandatory detention under § 1225(b)(2)(A) as Respondents argue. Respondents released Petitioner under § 1226. So

---

[6]    Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami,* 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs *before* a § 1229a proceeding even commences." (quoting 8 U.SC § 1225(b)(2)(A))).

[7]    Citing 8 U.S.C. § 1252, Respondents argue the Court does not have jurisdiction to review DHS's discretionary decisions to revoke Petitioner's release. Doc. 13, at 31-32. But, as Petitioner points out (Doc. 14, at 2), that section applies to "judicial review of a final order of removal." 8 U.S.C. § 1252(a)(1). Petitioner does not have a final order of removal, and he "challenges the legality of his continued detention under the statutory framework governing custody and bond determination." *Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026). So this Court does not lack jurisdiction. *Id.*

Petitioner is entitled to retain the legal protections under § 1226(a). And Respondents cannot erase them by simply "switching tracks." *Salcedo Aceros*, 2025 WL 2637503, at *8; *Briceno Solano v. Mason*, 2026 WL 311624, at *14 (S.D.W. Va. Feb. 4, 2026).

To release Petitioner, DHS had to determine that he "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). Respondents identify no change in circumstances that required revocation of Petitioner's conditional release. So he is entitled to release. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending").

### 3.    Procedural due process analysis.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v.*

*J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)).

"The [INA] establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The INA establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them."). Respondents encourage the Court to rest its decision on the statutory interpretation question. *See* Doc. 13, at 19-23.

Respondents also argue that "*Zadvydas* applies in this case," arguing it outright "supplants" the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), due process test. Doc. 13, at 24. But *Zadvydas* issues arise after a final order of removal, not before. The 90-day removal period does not commence until the removal order is administratively final. 8 U.S.C. § 1231(a)(1)(B). *See, e.g.*, *Rodriguez-Luna v. Noem,* 2026 WL 1557162, at *2 (D.N.M. June 2, 2026). ("Petitioner's appeal is still pending and the removal order has not become administratively final[, so] any claim for relief under *Zadvydas* is premature."). Respondents also argue that, even applying *Mathews*, Petitioner can show no due process violation. Doc. 13, at 25.

10

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews* (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from

11

immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). DHS deprived Petitioner of his protected status when it re-detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending almost three years here. By initially releasing Petitioner on his own recognizance, the Government necessarily determined that he was "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a formal change in this assessment. By permitting Petitioner to remain at liberty for nearly three years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

12

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in release grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE arrested him at a scheduled check-in without any notice of the reason or a pre-deprivation hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. This factor weighs in Petitioner's favor. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

13

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6. And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not considered necessary even after he missed a check-in and for nearly three years after.[8]

---

[8]    Petitioner alleges Respondents have provided neither the reasons for his re-detention following his release nor an interview at which he can present evidence demonstrating there is no significant likelihood of his removal in the reasonably foreseeable future. Doc. 3, at 12. And so he argues that Respondents have violated their own regulations in re-detaining him. *Id.* at 12-13.

Respondents are correct that, because Petitioner is not subject to a final order of removal, these regulations are not in play. Doc. 13, at 29; *see* 8 C.F.R. § 241.13(a) (establishing "special review procedures for those [noncitizens] who are subject to a final order of removal"). That said, revocation of release still requires notice of a change in circumstances. *See Danierov v. Noem*, 2026 WL 45288 (D.N.M. Jan. 7, 2026) ("Although DHS may revoke release at any time, courts require a material change in circumstances as to whether the noncitizen

**B.      Remedy.**

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir.1990))).[9]

---

poses a danger to the community or an unreasonable risk of flight before revoking release." (internal quotation marks omitted)).

[9]     Respondents' argument that Petitioner failed to exhaust his administrative remedies lacks merit. Doc. 13, at 32-33. Immigration Courts feel bound by *Matter of Yajure Hurtado*, 29 I. & N Dec. 216 (BIA 2025), so Petitioner correctly believed it futile to seek a bond hearing or appeal the decision to not provide one. In *Hurtado*, the Board of Immigration Appeals (BIA) held that those who entered the country without admission or parole are ineligible for a bond hearing and are detained under 8 U.S.C. § 1225(b)(2)(A). *Hurtado* is not binding on this Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.").

15

The undersigned finds that the ongoing violation of Petitioner's due process rights requires his immediate release subject to the same conditions of his earlier release.[10] This view is shared by numerous courts across the country.[11]

## IV.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate**

---

[10]    "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[11]    *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo,* 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

16

**release.**[12] **The Court should deny Petitioner's motion to expedite as moot. Doc. 15.**

**The undersigned also recommends that the Court order Respondents to certify compliance by filing a status report within ten business days of the Court's order**, and to promptly provide a copy of this order to Counsel for the Warden of the Diamondback Correctional Facility. Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.[13]

---

[12]    Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2023, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

[13]    The Court finds that it need not reach Petitioner's remaining arguments. As to Petitioner's request for EAJA fees, Petitioner must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B).

17

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by June 25, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[14] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[14]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

**ENTERED** this 22nd day of June, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE